**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| **JOHN K. ADAMS, # A-97885,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 15-cv-00604-NJR** |
| | ) | |
| **MENARD CORRECTIONAL CENTER** | ) | |
| **HEALTH CARE ADMINISTRATOR,** | ) | |
| **WEXFORD HEALTH SOURCES,** | ) | |
| **DAVID KETTLEKAMP, JEFF LESTER,** | ) | |
| **and UNKNOWN DOCTORS/NURSES,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## <u>MEMORANDUM AND ORDER</u>

**ROSENSTENGEL, District Judge:**

This matter is now before the Court for consideration of the second amended complaint filed by Plaintiff John Adams. (Doc. 18). In it, Plaintiff complains about the conditions of his confinement at Menard Correctional Center ("Menard") from 2010-2013. (*Id.* at 2-9). He also complains about the conditions he encountered at a transition home (*i.e.*, Rainbow House) during his release on parole in 2013. (*Id.* at 9-16). In conjunction with these complaints, Plaintiff sues Wexford Health Sources ("Wexford"), Menard's health care administrator, numerous unidentified doctors and nurses, his parole agent, and his parole supervisor. He seeks money damages. (*Id.* at 17).

The second amended complaint is now subject to preliminary review under 28 U.S.C. § 1915A. Under § 1915A, the Court is required to promptly screen prisoner complaints to filter out nonmeritorious claims. 28 U.S.C. § 1915A(a). The Court is required to dismiss any portion of the complaint that is legally frivolous, malicious, fails to state a claim upon which relief may

be granted, or asks for money damages from a defendant who by law is immune from such relief. 28 U.S.C. § 1915A(b).

## Background

Plaintiff filed his original complaint in the United States District Court for the Northern District of Illinois on May 1, 2015. (Doc. 1). The Northern District determined that the claims in the "largely illegible" complaint arose from conduct that occurred at Menard, a state prison that is located in this federal judicial district. (Doc. 6 at 1; Doc. 7). Although Plaintiff also complained about conditions he encountered while on parole at a facility located in the federal judicial district for the Central District of Illinois, the Northern District opined that these claim(s) were improperly joined in a single action. (Doc. 6 at 1). The case was therefore transferred to this District on June 2, 2015.

On June 3, 2015, this Court entered an Order striking the original complaint because it was illegible. (Doc. 10). Plaintiff was ordered to file a legible first amended complaint on or before July 8, 2015. (*Id.*). He was warned that failure to comply with the Order would result in dismissal of this action. *Id.* (citing FED. R. CIV. P. 41(b)).

Plaintiff did not comply with the Court's Order. (Docs. 10, 12). The first amended complaint was also "largely illegible." (Doc. 17 at 1). And, although not fatal to his claims, the pleading still set forth unrelated claims against different defendants, in violation of Rules 18 and 20 of the Federal Rules of Civil Procedure.[1] (*Id.*). The Court dismissed the first amended complaint on July 10, 2015.

---

[1] To complicate matters, Plaintiff filed a motion for preliminary injunction on July 6, 2015 (Doc. 15), in which he asserted a different set of claims against officials at Dixon Correctional Center. The Court denied the motion on July 8, 2015 (Doc. 16), after determining that the claims arose in the federal judicial district for the Northern District of Illinois and were not addressed in the original complaint (Doc. 1) or first amended complaint (Doc. 12). Plaintiff was instructed to file a separate action in the Northern District of Illinois, if he wished to pursue the claims and/or his request for injunctive relief.

Plaintiff was given another opportunity to amend the pleading on or before August 14, 2015. (*Id*. at 9). The Court warned him that unrelated claims against different defendants would be severed into new cases, and a filing fee would be assessed in each new case. (*Id*. at 10). Plaintiff filed his second amended complaint one day before the deadline.

### Discussion

The second amended complaint sets forth two groups of claims against different defendants. The first set of claims pertains to Plaintiff's confinement at Menard from 2011-2013; Plaintiff names Wexford and Menard's health care administrator, doctors, and nurses in connection with these claims. (Doc. 18 at 2-9). The second set of claims arises from the conditions Plaintiff encountered at Rainbow House during his release on parole between February and April 2013; Plaintiff names his parole agent (Jeff Lester) and parole supervisor (David Kettlecamp) in conjunction with these claims. (*Id*. at 9-17). The Court will separately summarize and discuss the two sets of claims below.

### Claims Arising at Menard

**1.      Summary of Allegations**

Plaintiff alleges that he has been "100% disabled" for twenty years. (Doc. 18 at 4). In 2008, he was sentenced to ten years of imprisonment at a handicap-accessible prison in Illinois. (*Id*.). He was initially housed at Lawrence Correctional Center, which he maintains is compliant with the Americans with Disabilities Act ("ADA"). (*Id*. at 2, 4). On June 10, 2010, Plaintiff was transferred to Menard, which is not ADA-compliant. (*Id*.).

At the time of his transfer, Plaintiff was able to walk with the assistance of a walker. (*Id*. at 9). Due to inadequate medical care and poor conditions of confinement at Menard,

however, his health deteriorated dramatically. By 2013, he was unable to lift himself out of bed. (*Id*.).

Plaintiff suffered several seizures and was moved to Menard's health care unit in August 2010. (*Id*. at 2). He shared a room with two inmates who were dying. The room had no mirror, sink, or toilet. Although Plaintiff was issued a urinal, it was often too full to use because Menard's medical staff did not regularly empty it. Under the circumstances, Plaintiff was unable to shower, use a sink, urinate (at times), or defecate without assistance from the nursing staff. (*Id*.). On occasion, he was allowed to wash his hands and brush his teeth only once per week. He was strictly limited to one shower per week, but two or three weeks would often pass without shower access. (*Id*. at 5).

When he needed to use the restroom, Plaintiff had to scream for help. (*Id*. at 2). The steel door and shatter-proof glass in his room made it difficult for the nursing staff to hear him. Even when they did, the nurses could not take Plaintiff to the restroom without assistance from a prison guard and an inmate worker. Only after this team was assembled was Plaintiff taken to the restroom, where he was routinely left on the toilet for more than an hour. (*Id*.).

Not surprisingly, this system sometimes failed, and Plaintiff soiled his clothing and bedding while waiting for the team to assemble. (*Id*. at 5). The nursing staff punished Plaintiff for having accidents "like you would discipline a dog," by thumping him or kicking him. (*Id*.). They required Plaintiff to clean up the mess, despite his limited ability to do so. The staff refused to provide him with new clothing or bedding.

The medical staff eventually decided that it would be less burdensome on them to require Plaintiff to use diapers for solid waste and a catheter for liquid waste. (*Id*. at 5). One particularly cruel nurse caused severe and permanent damage to Plaintiff's urethra by forcing a large-gauge

catheter into it instead of the small-gauge catheter that his urologist recommended. (*Id*. at 6). When the nurse was unable to insert the catheter, several other nurses and doctors attempted to complete the procedure unsuccessfully, leaving Plaintiff bleeding and in excruciating pain.

Plaintiff's urethra was so badly damaged from this incident that he was unable to urinate. Still, Menard's medical staff waited thirty days before referring him to the urologist. Plaintiff underwent multiple surgeries to repair the damage. During the first "emergency" procedure, the urologist removed a "baseball size[d] infectious puss pocket" and reported extensive damage. (*Id*. at 6-7). Even after the procedures were completed, Plaintiff was unable to urinate for three or four weeks at a time. (*Id*. at 7). He suffered continued pain and infection.

Plaintiff became bedridden for twenty months at Menard. (*Id*. at 8). During this time, he was denied all exercise opportunities. After six months, he developed bed sores that became infected. Doctors used a scalpel-like device to "exfoliate" the infected area by scraping the "bone clean." (*Id*.). Plaintiff was given no pain medication before, during, or after these procedures and "blacked out" more than once from pain. The bed sores did not heal for another year. (*Id*. at 9).

Plaintiff characterizes his experience at Menard as "actual torture." (*Id*. at 3). He complained, but his grievances were routinely ignored. His counselor visited Plaintiff monthly and also complained to the health care administrator about the lack of adequate medical care and poor living conditions. The counselor's complaints also fell on deaf ears.

## 2.      Section 1915A Review

In connection with these events, Plaintiff names Wexford, Menard's health care administrator, and numerous unidentified doctors and nurses as defendants. He sues them all in their individual and official capacities for monetary damages.

To facilitate the orderly management of future proceedings in this case, and in accordance with the objectives of Federal Rules of Civil Procedure 8(e) and 10(b), the Court has organized the claims in Plaintiff's *pro se* second amended complaint into the following enumerated counts:

**Count 1:** **Defendants violated Plaintiff's rights under the ADA, 42 U.S.C. § 12101 *et seq.*, and the Rehabilitation Act, 29 U.S.C. §§ 794-94e, by placing him in a cell at Menard from 2010-2013 without a sink, toilet, or shower and denying him opportunities to exercise;**

**Count 2:** **Defendants exhibited deliberate indifference toward Plaintiff's serious medical needs at Menard from 2010-2013, in violation of the Eighth Amendment;**

**Count 3:** **Defendants subjected Plaintiff to unconstitutional conditions of confinement at Menard from 2010-2013, in violation of the Eighth Amendment;**

**Count 4:** **Defendants subjected Plaintiff to the unauthorized use of excessive force at Menard from 2010-2013, in violation of the Eighth Amendment; and**

**Count 5:** **Defendants routinely ignored Plaintiff's grievances addressing inadequate medical care and the conditions of his confinement, in violation of the Fourteenth Amendment.**

The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. The designations do not constitute an opinion as to the merits of each claim.

As discussed in more detail below, **Wexford** shall be dismissed without prejudice from this action. Plaintiff shall be allowed to proceed with **Count 1** against the unidentified health care administrator, doctors, and nurses, in their official capacities only. He also shall be allowed to proceed with **Counts 2, 3,** and **4** against the unidentified health care administrator, doctors, and nurses, in their individual capacities only. **Count 5** shall be dismissed with prejudice.

## A.        Wexford Health Sources

Section 1983 creates a cause of action based on personal liability and predicated upon fault; thus, "to be liable under § 1983, the individual defendant must have caused or participated in a constitutional deprivation." *Pepper v. Village of Oak Park*, 430 F.3d 805, 810 (7th Cir. 2005). The doctrine of *respondeat superior* (supervisory liability) is not applicable to § 1983 actions. *Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001). A corporation can be held liable, however, if it had a policy or practice that caused the alleged violation of a constitutional right. *Woodward v. Corr. Med. Serv. of Ill., Inc.*, 368 F.3d 917, 927 (7th Cir. 2004); *Jackson v. Ill. Medi-Car, Inc.*, 300 F.3d 760, 766 n. 6 (7th Cir. 2002) (private corporation is treated as though it is a municipal entity in a § 1983 action).

Plaintiff's theory of liability against Wexford is rooted in the doctrine of *respondeat superior*. Wexford is a corporation that provides health care services at the prison. The corporation employed the health care administrator, doctors, and nurses who allegedly violated Plaintiff's rights. Yet Plaintiff identifies no policy or practice espoused by Wexford that caused a violation of his rights. By all indications, Wexford was named as a defendant based entirely on its supervisory role over these defendants. Plaintiff cannot proceed with a claim against Wexford under this theory, so Wexford shall be dismissed from this action without prejudice.

## B.        Count 1 – ADA/Rehabilitation Act Claim

Plaintiff brings this claim pursuant to the ADA, 42 U.S.C. § 12101 *et seq.*, however, the Court will consider whether a claim arises under the ADA and/or the Rehabilitation Act, 29 U.S.C. §§ 794-94e. *See Norfleet v. Walker*, 684 F.3d 688, 690 (7th Cir. 2012) (court must

analyze a litigant's claims and not just the legal theories he propounds, especially when he is litigating *pro se*).

The ADA provides that "no qualified individual with a disability shall, because of that disability . . . be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132 (2006). *See also Neisler v. Tuckwell*, 807 F.3d 225, 226 (7th Cir. 2015). The Rehabilitation Act also prohibits discrimination against qualified individuals based on a physical or mental disability. *See* 29 U.S.C. §§ 794-94e. Discrimination under both includes the failure to accommodate a disability. The second amended complaint suggests that Plaintiff is a qualified person with a disability who was subject to discrimination at Menard because of that disability.

Plaintiff named individual employees of the Illinois Department of Corrections ("IDOC"), all of whom worked at Menard, in connection with this claim. But individual employees of the IDOC cannot be sued under the ADA or the Rehabilitation Act. *Jaros v. Ill. Dep't of Corr.*, 684 F.3d 667, 670 (7th Cir. 2012). The proper defendant is the relevant state department or agency. *Id.* at 670 n. 2 (individual capacity claims are not available; the proper defendant is the agency or its director in his official capacity). For this reason, the individual capacity claims against Menard's health care administrator and the unknown doctors and nurses shall be dismissed with prejudice.

The fact that Plaintiff also named each of the defendants in their *official* capacities saves this claim. A suit against a prison official in his or her official capacity is, in effect, a suit against the state agency, *i.e.*, the IDOC, and, in this case, one that receives federal financial assistance. *Norfleet*, 684 F.3d at 690 (citations omitted). Count 1 thus survives preliminary review and shall

proceed against Menard's unidentified health care administrator, doctors, and nurses, in their official capacities only.

C.    **Counts 2, 3, and 4 – Eighth Amendment Claims**

The Eighth Amendment deliberate indifference to serious medical needs claim (**Count 2**), conditions of confinement claim (**Count 3**), and excessive force claim (**Count 4**) against Menard's unidentified health care administrator, doctors, and nurses shall receive further review. All three of these claims shall proceed against these defendants in their individual capacities only.

Relevant to the medical needs claim in **Count 2**, the Supreme Court has recognized that "deliberate indifference to serious medical needs of prisoners" may constitute cruel and unusual punishment under the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Farmer v. Brennan*, 511 U.S. 825 (1994); *see Erickson v. Pardus*, 551 U.S. 89, 94 (2006) (*per curiam*). Deliberate indifference involves a two-part test. The plaintiff must show that: (1) the medical condition was objectively serious; and (2) the state officials acted with deliberate indifference to his medical needs, which is a subjective standard. *Sherrod v. Lingle*, 223 F.3d 605, 619 (7th Cir. 2000).

The second amended complaint satisfies the minimum pleading requirements of an Eighth Amendment medical needs claim. According to the allegations, Plaintiff suffered from a number of medical conditions that are considered serious for screening purposes, including seizures, immobility, damage to his urethra, an inability to urinate, bed sores, pain, infections, etc. The pleading describes three years of deliberate indifference by the individual defendants; their conduct is not attributable to any policy, custom, or generalized practice at the prison. Under the circumstances, the individual claims in Count 2 against Menard's unidentified health

care administrator, doctors, and nurses shall receive further review, and the official capacity claims against them shall be dismissed without prejudice.

As for the conditions of confinement claim in **Count 3**, a plaintiff must also allege facts that, if true, would satisfy the objective and subjective components applicable to all Eighth Amendment claims. *McNeil v. Lane*, 16 F.3d 123, 124 (7th Cir. 1994); *Wilson v. Seiter*, 501 U.S. 294, 302 (1991). In this context, the objective component focuses on the nature of the acts or practices alleged to constitute cruel and unusual punishment. *Jackson v. Duckworth*, 955 F.2d 21, 22 (7th Cir. 1992). The objective analysis turns on whether the conditions of confinement exceeded contemporary bounds of decency of a mature civilized society. *Id*. The condition must result in unquestioned and serious deprivations of basic human needs or deprive inmates of the minimal civilized measure of life's necessities. *Rhodes v. Chapman,* 452 U.S. 337, 347 (1981).

Not all prison conditions trigger Eighth Amendment scrutiny—only deprivations of basic human needs like food, medical care, sanitation and physical safety. *Rhodes,* 452 U.S. at 346; s*ee also James v. Milwaukee County*, 956 F.2d 696, 699 (7th Cir. 1992). "Some conditions of confinement may establish an Eighth Amendment violation 'in combination' when each would not do so alone, but only when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise-for example, a low cell temperature at night combined with a failure to issue blankets." *Wilson,* 501 U.S. at 304. The Seventh Circuit has observed that "[a]dequate food and facilities to wash and use the toilet are among the 'minimal civilized measures of life's necessities,' *Rhodes*, 452 U.S. at 347, that must be afforded prisoners." *Jaros*, 684 F.3d at 670 (citations omitted). The second amended complaint indicates that Plaintiff was assigned to a cell that had no sink or toilet, he was denied access to a shower for weeks at a time, and he was denied clean linens and clothing when he

soiled himself. In addition, he became bedridden for twenty months, after being denied the opportunity to exercise. This satisfies the objective component of this claim.

But the pleading must still satisfy the subjective component, which requires that a prison official had a sufficiently culpable state of mind. *Wilson*, 501 U.S. at 298; *McNeil,* 16 F.3d at 124. In conditions of confinement cases, the relevant state of mind is deliberate indifference to inmate health or safety; the official must be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he also must draw the inference. *See, e.g., Farmer*, 511 U.S. at 837; *Wilson*, 501 U.S. at 303; *Estelle*, 429 U.S. at 104; *DelRaine v. Williford*, 32 F.3d 1024, 1032 (7th Cir. 1994). Plaintiff alleges that the individual defendants were aware of these conditions and the risks associated with exposure to them, yet took no action to address them. The individual claims in Count 3 against Menard's unidentified health care administrator, doctors, and nurses shall receive further review, and the official capacity claims against them shall be dismissed without prejudice.

Finally, the excessive force claim in **Count 4** shall also receive further review. Plaintiff alleges that the defendants kicked and thumped him when he soiled himself. The intentional use of excessive force by prison guards against an inmate without penological justification constitutes cruel and unusual punishment in violation of the Eighth Amendment and is actionable under § 1983. *See Wilkins v. Gaddy*, 559 U.S. 34 (2010); *DeWalt v. Carter*, 224 F.3d 607, 619 (7th Cir. 2000). To state an excessive force claim, an inmate must show that an assault occurred and that "it was carried out 'maliciously and sadistically' rather than as part of 'a good-faith effort to maintain or restore discipline.'" *Wilkins*, 559 U.S. at 40 (citing *Hudson v. McMillian*, 503 U.S. 1, 6 (1992)). The allegations suggest that the individual defendants thumped and kicked Plaintiff in order to humiliate him rather than to restore order or

discipline him. At this early stage, the individual claims in Count 4 against Menard's unidentified health care administrator, doctors, and nurses shall receive further review, and the official capacity claims against them shall be dismissed without prejudice.

### D.      Count 5 – Fourteenth Amendment Claim

In **Count 5**, Plaintiff maintains that the mishandling of his grievances resulted in a violation of his constitutional rights. But the Seventh Circuit has rejected Fourteenth Amendment due process claims arising from a prison's grievance process. *See Courtney v. Devore*, 595 Fed. Appx. 618, 620-21 (7th Cir. 2014) (noting that "state grievance procedures do not create substantive liberty interests protected by the due process," and the "mishandling" of grievances states no claim); *Owens v. Hinsley*, 635 F.3d 950, 953-54 (7th Cir. 2011) ("Prison grievance procedures are not mandated by the First Amendment and do not by their very existence create interests protected by the Due Process Clause. . . .").

The right to a grievance procedure exists primarily to ensure access to the courts. *Grieveson v. Anderson*, 538 F.3d 763, 772 n. 3 (7th Cir. 2008) (noting that the "procedural right" concerning the handling of grievances exists "to ensure that prisoners and detainees can access the courts"). But if prison officials "do not respond to a properly filed grievance or otherwise use affirmative misconduct to prevent a prisoner from exhausting," the grievance system is considered unavailable, and the path to federal court is clear. *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006) (prison remedies deemed exhausted where "prison officials were responsible for the mishandling of [a prisoner's] grievance"). Either way, no claim arises for the mishandling of Plaintiff's grievances. Count 5 shall be dismissed with prejudice.

### E.      Identification of Unknown Defendants

Although Counts 1, 2, 3, and 4 against Menard's health care administrator, doctors, and

nurses shall receive further review, Plaintiff has not identified any of these defendants with particularity. They cannot be served with the lawsuit at this time.

Where a prisoner's complaint states specific allegations describing conduct of individual prison staff members sufficient to raise a constitutional claim, but the names of those defendants are not known, the prisoner should have the opportunity to engage in limited discovery to ascertain the identity of those defendants. *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 832 (7th Cir. 2009). "Depending on the particular circumstances of the case, the court may assist the plaintiff by providing counsel for the limited purpose of amending the complaint; by ordering the named defendants to disclose the identities of unnamed officials involved; by allowing the case to proceed to discovery against high-level administrators with the expectation that they will identify the officials personally responsible; by dismissing the complaint without prejudice and providing a list of defects in the complaint; by ordering service on all officers who were on duty during the incident in question; or by some other means." *Donald v. Cook County Sheriff's Dept.*, 95 F.3d 548, 556 (7th Cir. 1996).

Under the circumstances presented, the Court finds that Menard's warden is best suited to respond to discovery aimed at identifying the unknown correctional officers at Menard. Further, the Court will appoint counsel to represent Plaintiff going forward, and this attorney will be responsible for undertaking efforts, through discovery or otherwise, to identify each defendant. Accordingly, the Clerk is **DIRECTED** to add the Warden of Menard Correctional Center as a defendant, in his or her official capacity only. *See* FED. R. CIV. P. 21; FED. R. CIV. P. 17(d). In any future documents filed in this case, the Warden should be identified by his or her proper name. Once the names of the defendants are discovered, Plaintiff's counsel shall file another amended complaint naming them in the case caption and throughout the pleading and requesting

dismissal of Menard's warden as a defendant.

## Claims Arising At Rainbow House

**1.      Summary of Allegations**

Plaintiff also complains about the conditions he was forced to endure after his release from Menard on parole. (Doc. 18 at 3, 9-17). Prior to his release, Plaintiff was promised a wheelchair and placement at an ADA-compliant transition home. He was ultimately denied both.

On February 5, 2013, Plaintiff was released on parole and instructed to report to the "Rainbow House," a transition home located in Springfield, Illinois. As soon as he exited Menard's health care unit, he was ordered to return the wheelchair he was using. (*Id*. at 10). Unable to walk without assistance, Plaintiff relied on others to transport him to his assigned transition home. Two inmates carried Plaintiff to the bus depot and dropped him off, a stranger carried him onto the bus, and two parolees carried him to the home. (*Id*.).

Plaintiff soon discovered that Rainbow House was not ADA-compliant. He could not get into the home without walking up eight steps. He sustained serious injuries, including concussion(s), when he fell down the front steps of the home on multiple occasions. He was assigned a second-story bedroom. Plaintiff, who was still bedridden, had no choice but to sleep on the first floor couch. He had no food and no way of obtaining any during the first four days he lived in the home. The house was infested with cockroaches and feral cats, and it was located in a crime-ridden area. (*Id*. at 11). Plaintiff was also robbed and assaulted by several local gang members, resulting in a concussion, broken ribs, and broken fingers. (*Id*. at 16).

Plaintiff repeatedly complained about these conditions to his probation officer, Jeff Lester, and his parole supervisor, David Kettlekamp, to no avail. (*Id*. at 12-14). He remained

at Rainbow House until April 28, 2013. In connection with his complaints about the conditions he was forced to endure at the Rainbow House, Plaintiff sues Defendants Lester and Kettlecamp.

## 2.      Improper Joinder and Severance

Plaintiff's claims against Defendants Lester and Kettlecamp are completely unrelated to the claims he brought against the Menard officials. He has improperly joined claims against different defendants in a single action, in violation of Rules 18 and 20 of the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. 18, 20. Severance of these claims is authorized under Rule 21 of the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. 21. The Court will exercise its authority under Rule 21 and sever the improperly joined claims into a new case at this time.

Rule 20 permits a plaintiff to join as many defendants as he wants in a single action, as long as "any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences" ***and*** "any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20(a)(2)(A), (B). Rule 18 permits a party to join "as many claims as it has against an opposing party." Fed. R. Civ. P. 18(a).

Under these rules, the Seventh Circuit has held that "multiple claims against a single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2." *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007). Unrelated claims against different defendants belong in separate lawsuits. *Id.* at 607. This prohibition against multi-defendant, multi-claim suits avoids the procedural "morass" often associated with such cases, while ensuring that prisoners pay the necessary fees and incur strikes in a manner that is consistent with the Prison Litigation Reform Act. *Id.* (citing 28 U.S.C. § 1915(b), (g)).

The second amended complaint violates the rules of joinder. *See* FED. R. CIV. P. 18, 20. Like those before it, this complaint includes two sets of unrelated claims against different defendants. Plaintiff sues one group of defendants, including Defendants Wexford, Menard's health care administrator, and numerous unidentified doctors and nurses, for violations of the ADA and his constitutional rights at Menard from 2010-2013. He sues a different group of defendants, including Defendants Lester and Kettlecamp, for violations of the ADA and his constitutional rights at the Rainbow House between February 5th and April 28th, 2013. He should have filed two (or more) separate lawsuits to address these claims.

Rule 21 authorizes this Court to sever claims against different defendants into separate actions. *See* FED. R. CIV. P. 21 ("On motion or on its own, the court may at any time, on just terms, add or drop a party . . . [or] sever any claim. . . ."). Consistent with Rule 21, the Court will sever Plaintiff's claims against Defendants Lester and Kettlecamp into a new case. A separate filing fee will be assessed in the newly-severed action; this fee is *in addition* to the filing fee that Plaintiff is already obligated to pay for this case. The newly-severed case will be separately screened pursuant to Section 1915A. *See Wheeler v. Wexford Health Sources, Inc.*, 689 F.3d 680, 683 (7th Cir. 2012) (district court may "creat[e] multiple suits" before preliminary review in a misjoinder situation).

Further, the severed case shall be transferred to the Central District of Illinois, where the conduct giving rise to these claims and the defendants is located. The disposition of the severed action shall be determined by the transferee court.

### Summary

In summary, this action will focus on the claims that arose at Menard in 2010-2013. Plaintiff shall be allowed to proceed with **Count 1** against the unidentified Menard health care

administrator, doctors, and nurses in their official capacities; the individual capacity claims against these defendants will be dismissed with prejudice. He shall also be allowed to proceed with **Counts 2, 3,** and **4** against the unidentified Menard health care administrator, doctors, and nurses in their individual capacities; the official capacity claims against these defendants will be dismissed without prejudice. **Count 5** shall be dismissed with prejudice against all of the defendants, and **Wexford** shall be dismissed without prejudice from this action.

The claims arising during Plaintiff's release on parole are not properly joined and will be severed from this action. A new case will be opened to address Plaintiff's claims against Defendants Lester and Kettlecamp, and the case will be transferred to the Central District of Illinois. Plaintiff will be obligated to pay a separate filing fee for that action. That fee is *in addition to* the fee that has already been assessed in this case.

## Pending Motion

Plaintiff has filed a second motion for recruitment of counsel, which was docketed as a "Supplemental Motion for Recruitment of Counsel." (Doc. 22). There, he indicates that his attempts to secure counsel have been unsuccessful. (*Id*. at 2). His requests for attorney representation in this matter were denied by four different attorneys. Plaintiff allegedly suffers from traumatic brain injuries and severe mental illness. For these reasons, Plaintiff asserts that he is unable to litigate this complex matter *pro se*.

There is no constitutional or statutory right to counsel in federal civil cases. *Romanelli v. Suliene*, 615 F.3d 847, 851 (7th Cir. 2010); *see also Johnson v. Doughty*, 433 F.3d 1001, 1006 (7th Cir. 2006). Nevertheless, the district court has discretion under 28 U.S.C. § 1915(e)(1) to recruit counsel for an indigent litigant. *Ray v. Wexford Health Sources, Inc.*, 706 F.3d 864, 866–67 (7th Cir. 2013). When a *pro se* litigant submits a request for assistance of counsel, the Court

must first consider whether the indigent plaintiff has made reasonable attempts to secure counsel on his own. *Navejar v. Iyiola*, 718 F.3d 692, 696 (7th Cir. 2013) (citing *Pruitt v. Mote*, 503 F.3d 647, 654 (7th Cir. 2007)). If so, the Court must examine "whether the difficulty of the case— factually and legally—exceeds the particular plaintiff's capacity as a layperson to coherently present it." *Navejar*, 718 F.3d at 696 (quoting *Pruitt*, 503 F.3d at 655). "The question . . . is whether the plaintiff appears competent to litigate his own claims, given their degree of difficulty, and this includes the tasks that normally attend litigation: evidence gathering, preparing and responding to motions and other court filings, and trial." *Pruitt*, 503 F.3d at 655. The Court also considers such factors as the plaintiff's "literacy, communication skills, education level, and litigation experience." *Id*.

The Court deems it appropriate to grant Plaintiff's request for counsel at this time. He is indigent. Plaintiff's efforts to secure counsel on his own have failed. The claims remaining in this action are relatively complex and involve a number of serious medical conditions. The conduct giving rise to these claims occurred over the course of three years at a prison where Plaintiff is no longer incarcerated, and he does not know the identity of any of the remaining defendants. Under the circumstances, the Court will appoint an attorney to represent Plaintiff in this district court.

## **Disposition**

The Clerk is **DIRECTED** to **TERMINATE** Defendants **LESTER** and **KETTLECAMP** on the docket sheet in CM/ECF and **ADD** Defendant **MENARD CORRECTIONAL CENTER'S WARDEN (official capacity only)** for the sole purpose of responding to discovery aimed at identifying the unknown defendants.

**IT IS ORDERED** that the individual capacity claims against Defendants **MENARD'S UNKNOWN HEALTH CARE ADMINISTRATOR, DOCTORS,** and **NURSES** in **COUNT 1** are **DISMISSED** with prejudice; the official capacity claims against Defendants **MENARD'S UNKNOWN HEALTH CARE ADMINISTRATOR, DOCTORS,** and **NURSES** in **COUNTS 2, 3,** and **4** are **DISMISSED** without prejudice; and **COUNT 5** is **DISMISSED** with prejudice, all for failure to state a claim upon which relief may be granted.

**IT IS ORDERED** that **WEXFORD HEALTH SOURCES** is DISMISSED without prejudice from this action because the second amended complaint fails to state a claim against this defendant upon which relief may be granted.

**IT IS HEREBY ORDERED** that the conditions of confinement claims arising at Rainbow House during Plaintiff's release on parole against Defendants **LESTER** and **KETTLECAMP,** all of which are unrelated to Counts 1-5, are **SEVERED** into a new case, which shall be captioned: **JOHN K. ADAMS, Plaintiff vs. JEFF LESTER and DAVID KETTLEKAMP, Defendants.**

The Clerk is **DIRECTED** to file the following documents in the new case:

(1)    This Memorandum and Order;

(2)    The Original Complaint (Doc. 1);

(3)    The First Amended Complaint (Doc. 12);

(4)    The Order Dismissing Amended Complaint (Doc. 17); and

(5)    The Second Amended Complaint (Doc. 18).

Plaintiff will be responsible for an additional $350.00 filing fee in the new case. If he seeks the Court's assistance in recruiting counsel in that case, he must file a new motion.

This Court will separately issue an Order transferring the newly-severed case to the Central District of Illinois.

**IT IS FURTHER ORDERED** that the _only claims remaining in this action are the ADA/Rehabilitation Act claim in COUNT 1, deliberate indifference to serious medical needs claim in COUNT 2, conditions of confinement claim in COUNT 3, and an excessive force claim in COUNT 4 against Defendants Menard's Warden (official capacity only) and Menard's Unknown Health Care Administrator, Doctors, and Nurses._ This case shall now be captioned: **JOHN K. ADAMS, Plaintiff vs. MENARD'S WARDEN (official capacity only), MENARD'S HEALTH CARE ADMINISTRATOR, and MENARD'S UNKNOWN DOCTORS and NURSES, Defendants.**

**IT IS FURTHER ORDERED** that Defendant **JEFF LESTER** and **DAVID KETTLECAMP** are **TERMINATED** from _this_ action with prejudice.

As to **COUNTS 1, 2, 3,** and **4**, which remain in this case, the Clerk shall prepare for Defendant **MENARD CORRECTIONAL CENTER'S WARDEN (official capacity only)**: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the second amended complaint, and this Memorandum and Order to this Defendant's place of employment. If the Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on the Defendant, and the Court will require the Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

**IT IS FURTHER ORDERED** that Plaintiff's supplemental motion for recruitment of

counsel (Doc. 22) is **GRANTED**; attorney **JEFFREY W. AHLERS** of Kahn, Dees, Donovan &

Kahn, LLP, Evansville, Indiana, is hereby **APPOINTED** to represent Plaintiff John K. Adams

for all further proceedings *in this case and in this Court only*. The **CLERK** is **DIRECTED** to

send a copy of the standard letter concerning appointment of counsel to Attorney Green

immediately.

On or before **January 22, 2016**, assigned counsel shall enter his/her appearance in this

case. Attorney Ahlers is free to share responsibilities with an associate who is also admitted to

practice in this district court. However, assigned counsel shall make first contact with Plaintiff,

explaining that an associate may also be working on the case. Plaintiff should wait for his

attorney to contact him in order to allow counsel an opportunity to review the court file.

The Clerk is **DIRECTED** to transmit this Order, copies of the docket sheet, and the

second amended complaint (Doc. 18) to Attorney Ahlers. The electronic case file is available

through the CM/ECF system.

Plaintiff is advised that the Court will not accept any filings from him individually while

he is represented by counsel, except a pleading that asks that he be allowed to have counsel

withdraw from representation. If counsel is allowed to withdraw at the request of Plaintiff, there

is no guarantee the Court will appoint other counsel to represent Plaintiff.

**IT IS ORDERED** that, on or before **March 21, 2016,** Plaintiff's counsel shall complete

all discovery necessary to identify the unknown defendants (including Menard's health care

administrator, doctors, and nurses).

**IT IS FURTHER ORDERED** that, on or before **April 20, 2016,** Plaintiff's counsel shall

file a Third Amended Complaint, which properly identifies all defendants in this action.

The Third Amended Complaint shall be subject to preliminary review under 28 U.S.C. § 1915A.

Service shall not be made on the Unknown Menard health care administrator, doctors, and nurses until such time as Plaintiff's counsel has identified them by name in a properly filed Third Amended Complaint, and this Court screens the amended pleading pursuant to 28 U.S.C. § 1915A.

**IT IS FURTHER ORDERED** that Plaintiff's counsel shall serve upon Defendant(s) (or upon defense counsel once an appearance is entered), a copy of every pleading or other document submitted for consideration by the Court. Plaintiff's counsel shall include with the original paper to be filed a certificate stating the date on which a true and correct copy of the document was served on Defendant(s) or counsel. Any paper received by a district judge or magistrate judge that has not been filed with the Clerk or that fails to include a certificate of service will be disregarded by the Court.

Defendant Menard's Warden is **ORDERED** to timely file an appropriate responsive pleading to the second amended complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to United States Magistrate Judge **Donald G. Wilkerson** for further pre-trial proceedings, including all further orders aimed at identifying the unknown defendants through discovery.

Further, this entire matter shall be **REFERRED** to United States Magistrate Judge **Wilkerson** for disposition, pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under § 1915, Plaintiff will be required to pay the full amount of the costs, notwithstanding that his application to proceed *in forma pauperis* has been granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that at the time application was made under 28 U.S.C. § 1915 for leave to commence this civil action without being required to prepay fees and costs or give security for the same, the applicant and his or her attorney were deemed to have entered into a stipulation that the recovery, if any, secured in the action shall be paid to the Clerk of the Court, who shall pay therefrom all unpaid costs taxed against plaintiff and remit the balance to Plaintiff. Local Rule 3.1(c)(1).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED**:  **January 8, 2016**

_____
**NANCY J. ROSENSTENGEL**
**United States District Judge**